UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRENDA HALE and FLORENCE JACKSON,

      Plaintiffs,

      v.

SENIOR SUITES CHICAGO MIDWAY
VILLAGE, LLC and SENIOR LIFESTYLE
CORPORATION,

      Defendants.

No. 25 CV 7862

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

A week after moving into a senior living facility owned and operated by defendants Senior Suites Chicago Midway Village and Senior Lifestyle Corporation, plaintiffs Brenda Hale and Florence Jackson were trapped in an elevator for over an hour. After calling for help three times, Hale suffered a severe panic attack and lost consciousness. Jackson, who has an intellectual disability, was unable to operate the emergency call system once Hale lost consciousness. Hale and Jackson sued defendants for failure to maintain accessible features and provide reasonable accommodations under the Americans with Disabilities Act, retaliation under the ADA and the Fair Housing Act, negligence, negligent infliction of emotional distress, breach of contract, unjust enrichment, and violations of the Illinois Consumer Fraud Act. Defendants move to dismiss the complaint for failure to state a claim upon which

relief can be granted.[1] For the reasons discussed below, the motion is granted in part and denied in part.

## I.     Legal Standards

A complaint requires only "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the plaintiff must allege facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a plaintiff does not need to recite every detail related to their allegations, they must "include enough facts to present 'a story that holds together.'" *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (quoting *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Iqbal*, 556 U.S. at 678.

To plead a claim of fraud under the Illinois Consumer Fraud Act, a plaintiff must plead with the particularity required by Fed. R. Civ. P. 9(b). *Kahn v. Walmart Inc.*, 107 F.4th 585, 598 (7th Cir. 2024). "While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'" *Camasta v.*

---

[1] Defendant Senior Lifestyle adopts Senior Suites Chicago Midway Village's arguments made in its memorandum in support of its motion to dismiss and reply brief.

*Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

At this stage, I accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678.

## II.    Facts

Plaintiff Brenda Hale was a 64-year-old woman with bipolar manic disorder. [12] ¶ 7.[2] Her sister, Florence Jackson, was a 77-year-old woman with intellectual disabilities and special cognitive needs. [12] ¶ 8. Defendants Senior Suites Chicago Midway Village, LLC, and its parent company Senior Lifestyle Corporation owned, operated, and managed a senior living facility at 6800 S Keating Ave., Chicago, Illinois. [12] ¶¶ 10, 12. Defendants, plaintiffs allege, used coordinated marketing campaigns, standardized materials, and staff assurances to promote their facility as a safe, accessible environment tailored to elderly and disabled residents. [12] ¶ 13.

In 2023, Hale was looking for housing for herself and Jackson, who required specialized care and accommodations. [12] ¶ 14. During her search, she says, Senior Suites staff assured her that the facility at 6800 S Keating "was ideal for elderly and disabled residents, specifically designed to meet their unique needs and ensure safety." [12] ¶ 15. Plaintiffs say they relied on these, and defendants' broader assurances, in choosing to reside at the senior living facility. [12] ¶ 16.

---

[2] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are taken from plaintiffs' amended complaint, [12].

About a week after they moved in, Hale and Jackson entered an elevator that malfunctioned and trapped them inside. [12] ¶¶ 18, 22. Hale pressed the emergency communication system, and was initially connected with someone who told her that help was on the way. [12] ¶ 24. Help did not arrive, so Hale pressed the emergency button two more times but was not connected with anyone. [12] ¶ 24. Hale, feeling trapped and helpless, suffered a severe panic attack and lost consciousness, injuring her knee as she fell to the ground. [12] ¶ 24.

Jackson was completely unable to navigate the emergency communication system because of her intellectual disability. [12] ¶ 23. Plaintiffs allege that the system lacked visual aids, simplified instructions, or alternative communication methods that would have been accessible to someone with cognitive disabilities. [12] ¶ 23.

When Hale regained consciousness, she says she was lying on the elevator floor with a firefighter standing over her and felt his feet making "aggressive contact with her body." [12] ¶ 25.

After the incident, Hale sought an incident report "to advocate on behalf of her disabled sister and herself to request accommodations and ensure that future elevator malfunctions would not subject herself and other disabled and elderly residents to similar trauma." [12] ¶ 27. Hale says she wanted this paperwork to "understand what safety failures had occurred" and formally request reasonable accommodations. [12] ¶ 28. Hale requested incident reports, paperwork, or any documentation about the incident ten times over the course of the three months

4

following the incident. [12] ¶ 29. On each occasion, defendants denied the requests and did not acknowledge that the incident occurred. [12] ¶ 30.

## III.    Analysis

### A.    Motion to File Sur-Reply

In their reply brief, defendants say that plaintiffs' response is "replete" with references to allegations that don't exist and is analogous to a "recent string of decisions involving parties filing AI-generated briefs." [34] at 1. They ask me to dismiss the plaintiffs' complaint with prejudice in response. Plaintiffs filed a motion to file a sur-reply to address these arguments. [38]. The motion is granted.

Most of the language that defendants point out relate to the services that plaintiffs argue defendants advertised and spoke about. Although plaintiffs do use some language that was not present in the complaint, the language cited was not made up out of whole cloth. The language was present on Senior Lifestyle's website as of December 1, 2025, and is supportive of the allegations in plaintiffs' complaint. *See* [38-1]; [38-3]; [12] ¶¶ 1, 13, 15. But because the precise language from the websites was not included in the complaint, and it is not clear that these webpages and the language on the webpages were the same at the time Hale was searching for housing for herself and Jackson, I do not rely on the attached exhibits and language, and instead solely rely on the allegations in the complaint. Similarly, the arguments plaintiffs made about the documented history of elevator malfunctions are consistent with the complaint. But again, I rely on the language in the complaint, not the language in plaintiffs' response brief.

### B. Statute of Limitations

#### 1. Accrual

Defendants argue that Counts I–III and V–VI are time-barred and should be dismissed. Dismissal on statute of limitations grounds is proper on a motion to dismiss only when the plaintiff's allegations clearly establish that the claims are untimely. *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 477 (7th Cir. 2024). "Because the [Americans with Disabilities Act] does not contain its own limitations period, the most appropriate state limitations period applies." *Castelino v. Rose-Hulman Inst. of Tech.*, 999 F.3d 1031, 1037 (7th Cir. 2021) (applying the Indiana statute of limitations for personal injury claims to ADA claims) (internal quotation marks and citations omitted). Illinois has a two-year statute of limitations for personal injury actions, which applies to plaintiffs' ADA and state-law negligence claims. 735 ILCS 5/13-202. The FHA also has a two-year statute of limitations. 42 U.S.C. § 3613. So, plaintiffs' claims must have accrued no more than two years before they filed their lawsuit on July 11, 2025.

Plaintiffs' ADA claim for failure to maintain accessible features accrued on the date of the "original act of discrimination" (i.e., the day Hale and Jackson were trapped in the elevator), which occurred on February 2, 2023. *Castelino*, 999 F.3d at 1038. Their state law negligence and negligent infliction of emotion distress claims similarly accrued "at the time plaintiff[s] suffer[ed] injury"—again, on the date of the elevator incident. *Paulsen v. Abbott Lab'ys*, 39 F.4th 473, 477 (7th Cir. 2022) (quoting *Wilson v. Devonshire Realty of Danville*, 307 Ill.App.3d 801, 805 (4th Dist. 1999)).

6

Plaintiffs filed their lawsuit on July 11, 2025, more than two years after their claims accrued. These claims fall outside the statute of limitations.

Plaintiffs' ADA failure to accommodate, ADA retaliation, and FHA retaliation claims are based on defendants' alleged refusal to provide Hale with documentation about the elevator incident on ten separate occasions over the course of three months following the incident. The last alleged refusal occurred in May 2023, which is still more than two years before plaintiffs filed their lawsuit. These claims are outside the statute of limitations as well. *Castelino*, 999 F.3d at 1038.

### 2. Tolling

Plaintiffs argue that the statute of limitations should be tolled for Jackson, who, because of her cognitive disabilities, lacks the mental capacity to timely assert her legal claims. Plaintiffs do not argue the same for Hale. Defendants counter that the ADA is not listed among the Illinois statutes enumerated in the Illinois tolling statute, so the Illinois tolling rules do not apply. They also argue that plaintiffs have not pleaded that Jackson suffered a legal disability sufficient to toll the limitations period governing her negligence claims.

Under Illinois law, when a plaintiff has a legal disability, the statute of limitations is tolled until the plaintiff is no longer disabled. 735 ILCS 5/13-211(a). To have a legal disability, a person must be "incapable of managing … her person or property and could not comprehend … her rights or the nature of the act giving rise to … her cause of action." *Brucker v. Mercola*, 227 Ill.2d 502, 543 (2007) (quoting *Bloom v. Braun*, 317 Ill.App.3d 720, 730–31 (1st Dist. 2000)). The "record must

7

contain sufficient allegations of fact from which one could conclude that the person seeking to be found legally disabled was incompetent or suffered from serious mental disorder which made that person entirely without understanding or capacity to make or communicate decisions regarding his person and totally unable to manage his estate or financial affairs." *In re Doe*, 301 Ill.App.3d 123, 127 (1st Dist. 1998). "In a personal injury case, a person is not legally disabled if he or she can comprehend the nature of the injury and its implications." *Id.*

The ADA, which does not have a built-in statute of limitations, borrows state statutes of limitations *and* tolling rules for general personal injury actions. *Cf. Talevski by next friend Talevski v. Health & Hosp. Corp. of Marion Cnty.*, 6 F.4th 713, 721–22 (7th Cir. 2021), *aff'd sub nom. Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166 (2023) (applying Illinois personal injury statute of limitations and tolling rules to 42 U.S.C. § 1983 claims, which do not have a built-in statute of limitations); *see also Ray v. Maher*, 662 F.3d 770, 772–73 (7th Cir. 2011) (when applying an Illinois limitations period, it is "applied in its entirety, complete with related tolling provisions"). So Illinois's tolling provision under 735 ILCS 5/13-211(a) applies to Jackson's ADA and state-law negligence claims.

Jackson's FHA claims are subject to the presumption of equitable tolling under federal law. *See Enbridge Energy, LP v. Nessel on behalf of Michigan*, 608 U.S. __, 146 S.Ct. 1074, 1082 (2026); *Lozano v. Montoya Alvarez*, 572 U.S. 1, 11 (2014) ("Congress is presumed to incorporate equitable tolling into federal statutes of limitations."); *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 142–43 (2d Cir.

8

2025) (finding equitable tolling applied to FHA claims). Equitable tolling on the basis of an adult's mental state is consistent with the FHA, which seeks to protect plaintiffs from discrimination in housing. Like the Illinois tolling rule, equitable tolling requires that a plaintiff's mental illness or disability "prevents the sufferer from managing [her] affairs and thus from understanding [her] legal rights and acting upon them." *Conroy v. Thompson*, 929 F.3d 818, 820 (7th Cir. 2019) (quoting *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996)).

The allegations in the complaint show that Jackson has intellectual disabilities and special cognitive needs. [12] ¶ 8. Hale sought housing not just for herself, but for Jackson, and Jackson was unable to navigate the same emergency communication system in the elevator that her sister used. [12] ¶¶ 14, 23–24. The complaint alleges that Jackson is "cognitively impaired such that she is unable to be 'fully able to manage [her] person or estate.'" [12] ¶ 33. At the motion to dismiss stage, where I may only dismiss on statute of limitations grounds where the allegations clearly establish that the claims are untimely, plaintiffs' allegations do not clearly establish that Jackson is not legally disabled for the purposes of the Illinois tolling statue and equitable tolling. *Cielak*, 112 F.4th at 477. Because the complaint alleges that Jackson is legally disabled, the complaint does not conclusively settle the timeliness of her ADA, FHA, and negligence claims. Jackson may proceed on these claims.

On the other hand, the allegations establish that Hale's ADA, FHA, and negligence claims are untimely, and show that she is not subject to any tolling provision. Plaintiffs make no argument otherwise. Hale's ADA, FHA, and negligence

claims are dismissed with prejudice. *LJM Partners, Ltd. v. Barclays Cap., Inc.*, 165 F.4th 552, 561, 570–71 (7th Cir. 2026) (affirming dismissal with prejudice of claims barred by the statute of limitations because amendment would be futile).

## C. Americans with Disabilities Act

### 1. Place of Public Accommodation

Defendants say that the senior living facility where Jackson resided was a residential building to which the ADA does not apply. Because the facility is more than just a residential building, the ADA applies.

The ADA prohibits discrimination in places of "public accommodation." 42 U.S.C. § 12182(a). Places of accommodation are defined in twelve categories, one of which defines public accommodation as "a day care center, senior citizen center, homeless shelter, … or other social service center establishment." 42 U.S.C. § 12181(7)(K). Another category includes the "professional office of a health care provider, hospital, or other service establishment." 42 U.S.C. § 12181(7)(F). Places of public accommodation "should be construed liberally to afford people with disabilities equal access to the wide variety of establishments available to the nondisabled." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 676–77 (2001) (internal quotation marks omitted).

The senior living facility that Jackson lived at not only provided housing but also provided "reliable care and accommodations" for elderly and disabled residents. [12] ¶ 13. Hale chose the facility because it was "specifically designed to meet" her and Jackson's "unique needs." [12] ¶ 15. This was important because Jackson in particular "required specialized care and accommodations." [12] ¶ 14. While not

10

specific about what kind of care and accommodations were implemented, taking all inferences in Jackson's favor, the complaint describes a mixed-use facility, providing more than just housing for its residents. A facility that includes more than just housing, including specialized medical or assistance services for its residents falls under Title III of the ADA. *See Stiner v. Brookdale Senior Living, Inc.*, 354 F.Supp.3d 1046, 1058–59 (N.D. Cal. 2019), *aff'd in part, rev'd in part and remanded*, 810 F. App'x 531 (9th Cir. 2020) (services provided at facilities "place them firmly within the category" of public accommodations subject to the ADA); *Montano v. Bonnie Brae Convalescent Hosp., Inc.*, 79 F.Supp.3d 1120, 1129 (C.D. Cal. 2015) (nursing home covered by Title III of the ADA as a health care provider); *Hubbard v. Twin Oaks Health & Rehab. Ctr.*, 408 F.Supp.2d 923, 929 (E.D. Cal. 2004) (undisputed that a "skilled nursing facility" was a place of public accommodation under the ADA); *see also* Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities, 56 Fed.Reg. 35544–01, 35552 (July 26, 1991) (nursing facility or residential care facility is "a place of public accommodation under the ADA" if "it can appropriately be categorized as a service establishment or as a social service establishment"); *id.* (explaining that a homeless shelter that permits "short-term stays *or* provided social services to its residents" would be covered under the ADA as either a "place of lodging," a "social service center establishment," or both) (emphasis added).

Defendants cite three cases to support its argument that the ADA only applies to nonresidential facilities. *Henley v. Am. Homes 4 Rent Props. Ten, LLC*, No. 20-cv-

11

05509, 2021 WL 1293831 (N.D. Ill. Apr. 7, 2021); *Torrence v. Advanced Home Care, Inc.*, No. 08-cv-2821, 2009 WL 1444448 (N.D. Ill. May 21, 2009); *Radivojevic v. Granville Terrace Mut. Ownership Trust*, No. 00 C 3090, 2001 WL 123796 (N.D. Ill. Jan. 31, 2001). But none of these cases include senior living facilities, nursing homes, or other places with services beyond housing, so they are inapposite.

The allegations are sufficient to allege that the defendants' facility was a mixed-use facility that falls under the ADA. If, as facts are developed, defendants can show that their facility is only residential, they may renew their argument that the ADA does not apply to the facility.

### 2. Retaliation

To allege retaliation under the ADA, Jackson must allege that she "engaged in a statutorily protected activity and was subjected to an adverse … action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014). "To have engaged in an activity protected by the ADA, the employee 'must have asserted [her] rights under the ADA by either seeking an accommodation or raising a claim of discrimination due to [her] disability.'" *Trahanas v. Northwestern Univ.*, 64 F.4th 842, 856 n.6 (7th Cir. 2023) (quoting *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 814–15 (7th Cir. 2015)) (alterations in original).

Jackson does not allege that she sought an accommodation or raised a claim of a disability; rather, she alleges that Hale sought incident documentation on her behalf to "evaluate potential ADA violations and advocate for disability accommodations." [12] ¶ 36. Simply seeking documentation in order to raise a claim

12

of discrimination or formally seek an accommodation is not itself a protected activity, and Jackson cites no cases to the contrary. Because Jackson fails to allege that she engaged in a protected activity, her retaliation claim fails.

But even if asking for documentation was a protected activity, the denial of Hale's request for documentation is not an adverse action that gives rise to a retaliation claim under the ADA. Jackson argues that the denial of Hale's request for documents was a denial of her "right to request reasonable accommodations." [28] at 9. But retaliation claims based on a failure to accommodate are "'circular' because 'the denial of such requests can hardly be considered unlawful retaliation for the act of requesting them.'" *Moore-Fotso v. Bd. of Educ. of the City of Chi.*, 211 F.Supp.3d 1012, 1038 (N.D. Ill. 2016) (quoting *Sheahan v. Dart*, No. 13-cv-9134, 2015 WL 1915246, at *6 (N.D. Ill. Apr. 23, 2015)); *see also Arroyo v. City of Chicago*, No. 21-CV-1148, 2026 WL 673180, at *19 (N.D. Ill. Mar. 10, 2026). "Otherwise, almost every failure to accommodate claim would be simultaneously a retaliation claim." *Moore-Fotso*, 211 F.Supp.3d at 1038 (internal quotation marks and citation omitted). And "it was unlikely Congress' intent to provide plaintiffs redundant relief for the same conduct when it established the anti-retaliation provisions of the ADA." *Id.*

"Because the fundamental legal flaw in these claims cannot be pleaded away," amendment would be futile, and any retaliation claim based on the denial of plaintiffs' request for documentation is dismissed with prejudice. *See Hassett v.*

*United Airlines, Inc.*, No. 23 C 14592, 2024 WL 1556300, at \*5 (N.D. Ill. Apr. 10, 2024).[3]

### D.     Fair Housing Act

On the other hand, under the Fair Housing Act Amendments, the failure to provide a reasonable accommodation, if done with discriminatory intent, may, by itself, amount to an interference with Jackson's rights under the Fair Housing Act. 24 C.F.R. § 100.400(c)(2); *see Bloch v. Frischholz*, 587 F.3d 771, 781–82 (7th Cir. 2009); *Stevens v. Hollywood Towers & Condo. Ass'n*, 836 F.Supp.2d 800, 811 (N.D. Ill. 2011). The Fair Housing Act Amendments make it unlawful "to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any person the exercise or enjoyment of, any right granted or protected by" certain sections of the FHA. 42 U.S.C. § 3617. The FHA protects against discrimination. *See* 42 U.S.C. § 3604. Discrimination under the FHA includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). So it is unlawful to interfere with a person's right to reasonable accommodation, and it may be interference to refuse a reasonable accommodation.

---

[3] While plaintiffs use the word "interference," they say their claim is a retaliation claim, and their arguments are about retaliation, not interference, which is a different claim under the ADA. *Cf. Preddie*, 799 F.3d at 816–19 (analyzing Family and Medical Leave Act retaliation and interference claims separately).

The elements of a § 3617 claim are: "(1) [the plaintiff is] a protected individual under the FHA, (2) [they were] engaged in the exercise or enjoyment of [their] fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of [their] protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate." *Watters v. Homeowners' Ass'n at Pres. at Bridgewater*, 48 F.4th 779, 785 (7th Cir. 2022) (citation omitted) (alteration in original).

Jackson argues that by withholding documentation, defendants prevented her from "meaningfully exercising [her] right to request reasonable accommodations under Section 3604(f)(3)(B)." [28] at 9. Where a defendant acts (or fails to act) "for the purposes of interfering with" a plaintiff's request for reasonable accommodation, including coercing or intimidating the plaintiff from making the request in the first place, it may give rise to a claim of interference. *Cf. Summerland v. Exelon Gen. Co.*, 455 F.Supp.3d 646, 663–34 (N.D. Ill. 2020) (denied motion to dismiss interference claim where the plaintiff alleged her employer threatened to deny access to her worksite if she took additional FMLA or sick leave); *Shaffer v. Am. Med. Ass'n*, 662 F.3d 439, 443–44 (7th Cir. 2011) (The plaintiff "was eligible for FMLA protection, covered by the FMLA, and provided sufficient notice of his intent to take leave. If [he] can demonstrate that [his employer] fired him to prevent him from exercising his right to reinstatement in his position, he can succeed on an interference theory."). Jackson alleges that she was an individual with disabilities and lived in a dwelling covered by the Fair Housing Act, that she requested documentation of an incident to

15

request an accommodation, and that defendants refused to provide incident documentation with the "intent to discourage Plaintiffs from advocating for their housing rights." [12] ¶¶ 52–56. This is enough to allege an FHA interference claim.[4]

### E.    Negligent Infliction of Emotional Distress

To state a claim for negligent infliction of emotional distress, a plaintiff must allege the traditional elements of negligence: duty, breach, causation, and damages. *Schweihs v. Chase Home Fin., LLC*, 2016 IL 120041, ¶ 31. If a plaintiff alleges that she is a direct victim of the defendant's conduct, she must also "include an allegation of contemporaneous physical injury or impact." *Id.* ¶ 38. If a plaintiff alleges she was a bystander, she must allege that (1) she was a bystander in the "zone of physical danger," *i.e.*, that she was in "such proximity to the accident in which the direct victim was physically injured that there was a high risk to [her] of physical impact" and (2) she suffered "physical injury or illness as a result of the emotional distress, caused by the defendant's negligence." *Id.* ¶ 32.

Jackson argues that she incurred a physical injury or impact from the elevator because she endured trauma requiring medication, including as a bystander to her sister's loss of consciousness. [12] ¶ 48; [28] at 14. But a direct plaintiff is required to plead *physical* impact or injury. *Benton v. Little League Baseball, Inc.*, 2020 IL App (1st) 190549, ¶ 80 ("Contrary to plaintiffs' contention otherwise, physical contact of some sort is absolutely necessary to sustain a direct victim negligent infliction of

---

[4] Defendants argue that Jackson cannot bring any retaliation claims because she was not the one engaged in protected activity. But Hale's actions were done on Jackson's behalf, because she could not do so herself, so they are attributable to Jackson as well.

emotional distress action."). Physical manifestations of emotional distress are not enough. *Id.* Even as a bystander, Jackson alleges only mental harm. Needing medication for mental harm does not necessarily suggest physical injury or illness. Jackson has not alleged physical contact, so cannot proceed as a direct victim, and she has not alleged physical illness from emotional harm, so cannot proceed as a bystander.

## F. Illinois Consumer Fraud Act

Defendants argue that plaintiffs are not consumers and cannot bring a claim under the Illinois Consumer Fraud Act, that they did not meet the heightened pleading standards under Fed. R. Civ. P. 9(b), and that they did not sustain actual damages. Although I find that plaintiffs have alleged consumer status and have sustained actual damages, plaintiffs fail to meet the heightened pleading standard for fraud under Fed. R. Civ. P. 9(b).

The ICFA "protects consumers against unfair or deceptive acts or practices, including fraud, false promise, and the misrepresentation or concealment, suppression or omission of any material fact," or "the use or employment of any practice described in Section 2 of the [Illinois Uniform Deceptive Trade Practices Act]." *Rao v. J.P. Morgan Chase Bank, N.A.*, 153 F.4th 541, 555 (7th Cir. 2025) (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 574 (7th Cir. 2012)); 815 ILCS 505/2. The Uniform Deceptive Trade Practices Act, in turn, says that it is a deceptive practice to "advertise[] goods or services with intent not to sell them as

17

advertised" or "engage[] in any other conduct which similarly creates a likelihood of confusion or misunderstanding." 815 ILCS 510/2(a)(9), (12).

The ICFA's definition of "merchandise" includes "any objects, wares, goods, commodities, intangibles, real estate situated outside the State of Illinois, or services." 815 ILCS 505/1(b). It defines "consumer" as "any person who purchases or contracts for the purchase of merchandise … for his use or that of a member of his household." 815 ILCS 505/1(e).

Defendants say plaintiffs had a housing agreement with defendants, not an agreement for services, and so are not consumers under the ICFA. But as I already found, plaintiffs have alleged that the defendants advertised their accommodations and ability to provide specialized care—"services" for purposes of the ICFA. Because services are covered under the ICFA, plaintiffs are consumers under the statute and can challenge the alleged misrepresentations that defendants made.

Defendants also say that plaintiffs have not alleged damages recoverable under the ICFA because they only allege mental harm. Plaintiffs allege that they relied on defendants' misrepresentations and omissions "when choosing the facility and paying monthly fees for residential services," and so have alleged economic harm.

Finally, defendants argue that plaintiffs have not alleged with the particularity required under Fed. R. Civ. P. 9(b). Plaintiffs do not argue that Rule 9(b) does not apply. *See Kahn*, 107 F.4th at 598 (heightened pleading standard applies to allegations of a deceptive practice under the ICFA). Plaintiffs allege that "defendants" violated the ICFA by "making material misrepresentations about the

18

safety and accessibility of their facility," that "Defendants' marketing materials prominently featured accessibility symbols and promised specialized care for disabled residents," and that "Senior Suites staff specifically represented that the facility was ideal for elderly and disabled residents." [12] ¶¶ 61–63.

The "most basic consideration" of Rule 9(b)'s heightened pleading standard is to "provide fair notice to each individual Defendant concerning the nature of his or her alleged participation in the fraud," so "the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Rocha v. Rudd*, 826 F.3d 905, 911 (7th Cir. 2016) (quoting *Vicom, Inc. v. Harbridge Merch. Servs.*, 20 F.3d 771, 777–78 (7th Cir. 1994)). A complaint that "lump[s] together" defendants for pleading purposes is not enough. *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 599 (7th Cir. 2019).

Plaintiffs do not plead with particularity, because they "lump together" the defendants, and do not plead the "who, what, when, where, and how of the fraud.'" *Camasta*, 761 F.3d at 737. Plaintiffs do not allege how each defendant participated in the fraud, nor how Senior Suites's staff's statements are attributable to Senior Suites or Senior Lifestyle. Because plaintiffs group the defendants together and do not allege how they each took part in the alleged fraud, the ICFA claim is dismissed.

## G. Breach of Contract

Plaintiffs' breach of contract claim is also dismissed because they have not adequately pleaded that they substantially performed under the contract.

19

While defendants criticize plaintiffs for failure to attach the alleged agreements or specify what kind of agreements they were, plaintiffs are only required to allege that (1) there was a valid and enforceable contract; (2) plaintiffs substantially performed their part of the contract; (3) defendants breached; and (4) plaintiffs were harmed by the breach. *Rahimzadeh v. Ace Am. Ins. Co.*, 142 F.4th 972, 976 (7th Cir. 2025). Plaintiffs allege that they had entered housing agreements, that defendants breached their obligations under the agreements, and that plaintiffs suffered damages. This is enough to satisfy elements 1, 3, and 4. But plaintiffs do not allege that they substantially performed their obligations under the contract, and so the claim is dismissed.

### H.    Unjust Enrichment

Finally, defendants say that plaintiffs cannot maintain their unjust enrichment claim in addition to their breach of contract claim, and they did not plead in the alternative. Plaintiffs are allowed to bring both breach of contract and unjust enrichment claims. *See Hernandez v. Ill. Inst. of Tech.*, 63 F.4th 661, 671 (7th Cir. 2023). But plaintiffs "may not 'incorporate by reference allegations of the existence of a [valid] contract between the parties in the unjust enrichment count,' because this would seek relief that Illinois does not offer." *Id.* (quoting *Gociman v. Loyola Univ. of Chi.*, 41 F.4th 873, 887 (7th Cir. 2022)). As in *Gociman*, the plaintiffs here have "inadvertently 'incorporated by reference allegations of the existence of a contract between the parties,'" and unlike *Hernandez*, they have not expressly pleaded their

unjust enrichment claim in the alternative. *Id.* at 671–72. The unjust enrichment claim is dismissed.

## IV.     Conclusion

Plaintiffs' motion to file a sur-reply, [38], is granted. Defendants' motions to dismiss, [16] and [35], are granted in part and denied in part. Hale's claims under the ADA and FHA and for negligence and negligent infliction of emotional distress (Counts I–III, V–VI) are dismissed with prejudice as untimely. Jackson's claim for ADA retaliation (Count I) is dismissed with prejudice because amendment would be futile. Plaintiffs' claims for violations of the ICFA, breach of contract, and unjust enrichment (Counts IV, VII–VIII) are dismissed without prejudice.[5] Jackson's claim for negligent infliction of emotional distress (Count VI) is dismissed without prejudice. Her claims for failure to accommodate under the ADA, FHA interference, and negligence (Counts II–III, V) may proceed.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: May 11, 2026

---

[5] *Hernandez*, 63 F.4th at 671–72 (plaintiffs are "generally entitled to at least one chance to amend their complaint to cure an error in response to a district court's dismissal order") (internal quotation marks and citation omitted).